The facts of this case, as I understand them, are as follows: The plaintiff, Catania, is the owner of the dwelling No. 1220 Dumaine Street which he rented to one Willie Brown under verbal lease from month to month. Brown remained in th property for over four years. Prior to the month of July 1945, he purchased a home on Willow Street which was occupied by the defendant, Willie Miles, under lease from the previous owner. Being desirous of obtaining possession of the property, Brown made an agreement with Miles that, if Miles would turn over possession of the Willow Street property to him he would, in turn, give Miles possession of the Dumaine Street property which he was renting from plaintiff. In accordance with this understanding, Brown directed his attorney to write a letter to plaintiff to advise him of the arrangement and to ascertain whether plaintiff had any objection thereto. Accordingly, on July 13, 1945, Brown's attorney wrote plaintiff as follows:
"Dear Sir:
Willie Brown, who rents from you at 1220 Dumaine Street, at $20.00 per month, has purchased a piece of property at 3413-15 Willow Street, which he ultimately expects to use as a home.
His tenant, residing at 3413 Willow Street, is anxious to trade houses.
I would thank you to let me know if you would have any objection to William Miles, presently living at 3413 Willow Street, taking possession of your property at 1220 Dumaine Street, under the same terms and conditions that Willie Brown is renting the premises, so as to facilitate Willie Brown in moving into his property at 3413 Willow Street.
I would thank you for a reply."
Although plaintiff received this letter in due course, he failed to reply thereto. Thereafter, during the month of September 1945, Brown and Miles attempted to carry out their agreement, Brown moving into the Willow Street property and Miles moving into the Dumaine Street house. However, when Miles was moving into the Dumaine Street property, plaintiff protested vigorously and even attempted to have the police eject him. Thereafter, during the month of October 1945, plaintiff brought the instant proceeding under Act No. 298 of 1938 to evict Miles from the premises on the theory that he is a trespasser.
In resisting the proceeding, Miles maintains that he is not a trespasser but that he is a lawful occupant of the premises either as a tenant or plaintiff or as a sub-tenant holding under Brown, plaintiff's tenant. He bases his contention respecting the legality of his tenancy on the fact that, when Brown's attorney wrote plaintiff advising him of the arrangement between himself and Brown and requested a reply, plaintiff's failure to protest within a reasonable time worked an estoppel against him; that Brown's lease was, ipso facto, transferred to him and that, therefore, plaintiffs only remedy for ejectment is to proceed in the First City Court under Section 2155 of the Revised Statutes, which provides for summary proceedings for possession of premises as between landlord and tenant. He alternatively contends that, at all events, he should be regarded as a sub-tenant and that, since plaintiff's lease to Brown has reconducted from month to month, he is in lawful possession of the premises.
I believe that both contentions are well founded in fact and in law. Plaintiff attempts to overcome the effect of his failure to reply to the letter of Brown's attorney *Page 348 
by testifying that he told Brown on many occasions, after receipt of the letter, that he would not consent to the arrangement between defendant and Brown, as he desired to rent the property on Dumaine Street to other persons. Miles, on the other hand, testified that the reason why plaintiff objected to his occupancy was due to the fact that plaintiff wanted to raise the rent from $20 to $25 per month.
The majority opinion holds that plaintiff's testimony prevails despite his silence and inaction concerning the letter he received from Brown's attorney. I cannot regard the effect of plaintiff's conduct so lightly and I believe that his failure to reply to the letter from Brown's attorney within a reasonable time estops him from now contending that he did not acquiesce to the arrangement outlined in the letter. If my appraisal of the facts is correct, it is obvious that plaintiff's suit must fall as the relationship of landlord and tenant exists.
Assuming, however, that the contrary conclusion of the majority is sound, it does not follow that defendant is a trespasser. I am convinced that he should be regarded as a sub-tenant of the property, holding under Brown.
It is admitted by the majority (as it must be in view of Article 2725 of the Civil Code) that Brown, as tenant, had the right to sublease the premises as this power has not been expressly interdicted. Therefore, even if plaintiff protested respecting the substitution of Miles as his tenant, Brown, nevertheless, had the right to install defendant in the premises as his sub-tenant. The only way in which plaintiff could have prevented this sublease would have been to cancel his lease with Brown. This he has never done and, therefore, the lease continued to reconduct from month to month by operation of law. Of course, plaintiff had the right, under Sections 2155 and 2158 of the Revised Statutes, to prevent a reconduction by serving Miles, as the occupant of the premises, with a ten day notice to vacate. But he has not elected to follow this procedure.
In addition, I do not believe that plaintiff is entitled to relief under Act No. 298 of 1938, even if it be conceded that the majority are correct in concluding that defendant is a trespasser on the premises. An examination of the statute (which is commonly referred to as the Sharecropper's Act) will readily reveal, in my opinion, that it was never intended to cover situations like the one presented here. On the contrary, it was plainly designed to provide a sununary remedy against sharecroppers, half-hands and the like, who refuse to surrender possession to the owner, when the purpose of their occupancy had terminated. The provisions of the law are, however, perhaps broad enough to authorize proceedings against employees who are given occupancy of premises in connection with their employment when such employment terminates, but, since it provides a summary remedy, it should not be extended to cases not specifically covered. Code of Practice, Article 754.
The pertinent part of Section I of Act No. 298 of 1938 reads as follows: "That when any share-cropper, half hand, day laborer, or any occupant of land-holding through theaccommodation of the owner, or any other occupant other than a tenant or lessee, shall be in possession of any house, building or landed estate, after the purpose of such occupancy andpossession shall have ceased and terminated, whether for reason of breach or termination of contract, or otherwise, and the owner * * * shall be desirous of obtaining possession of said premises, he shall demand and require in writing such occupant or possessor to remove from and leave the same, allowing him five calendar days from the day such notice is delivered." (Italics mine.)
The language of the foregoing is clear and plainly discloses that the statute has application only in cases where possession of the occupant was by consent and therefore legal but that such possession has subsequently become unlawful by reason of the fact that the purpose for which occupancy had been granted has ceased and terminated. Therefore, if (as determined by the majority) the possession of defendant was initially and at all times thereafter unlawful, the remedy given by Act No. 298 of 1938 is not available.
It is apparent, however, that the majority opinion attempts to rescue plaintiff's case from the foregoing objection by declaring, in effect, that, since Brown, as the tenant, had paid the rent for the month of September he had the right to surrender the occupancy to defendant for that month and that there was nothing that plaintiff could do about it. This statement carries the hint that defendant's occupancy, through Brown, was initially lawful but that it ceased on October 1st, when Brown's lease came to an end. I am unable to follow this *Page 349 
line of thought. If it be conceded that Brown permitted defendant to occupy the premises in his place and stead, this did not, ipso facto, cancel Brown's lease or prevent it from reconducting at the end of each month. Brown's lease with plaintiff was not in anywise affected whether he subleased the premises to defendant or let him occupy them without the payment of rent. The statement in the majority opinion, that Brown had notified Catania that he did not intend to lease the premises beyond such time as he could get possession of the Willow Street property, is not justified by the evidence. Brown's letter does not authorize this view as he merely requested Catania's approval of the exchange arrangement. If Catania had refused the request, it does not follow that Brown would have agreed to cancel his lease, as Miles surely would not have vacated the Willow Street property unless he was assured that he could get possession of the house on Dumaine Street.
Plaintiff had an adequate remedy under the Revised Statutes, above cited, but, in disregard of these statutes, he has elected to proceed under Act No. 298 of 1938, which is wholly inapplicable to cases of this sort.
For these reasons, I respectfully dissent.